Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1837 | **DATE** | 9/14/2000 |
| **CASE TITLE** | Batten vs. Bank One et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** This Court grants in its entirety Bank One's motion (Doc 18-1) to dismiss Batten's Complaint.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 15 2000 date docketed | |
| ✓ | Docketing to mail notices. | | | 23 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 SEP 14 PM 2:26 | | |
| | SCT courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TIM BATTEN,                                )
                                           )
                    Plaintiff,             )
                                           )
vs.                                        )    00 C 1837
                                           )
BANK ONE, N.A.; BANK ONE TEXAS, N.A.;      )
BANK ONE TEXAS CORPORATION; and            )
BANK ONE CORPORATION,                      )
                                           )
                    Defendants.            )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of the Defendants Bank One, N.A., Bank One Texas, N.A., Bank One Texas Corporation, and Bank One Corporation (collectively "Bank One"), to dismiss the complaint of the Plaintiff Tim Batten ("Batten"). For the reasons set forth below, the Court grants Bank One's motion in its entirety.

## BACKGROUND

Batten challenges Bank One's practice of charging a fee for cashing checks drawn on Bank One but presented by non-customers (the "practice"). Batten receives payroll checks issued by his employer on an account at Bank One. Although Batten

is not a customer of Bank One, he has presented paychecks to Bank One and asked that they be cashed. Each time Batten has done so, Bank One has charged him a three-dollar fee. Bank One allegedly imposes the three-dollar fee on non-customers in Texas, Colorado, Kentucky, Indiana and Wisconsin, and a two-dollar fee on non-customers in Louisiana.

Count I of Batten's Amended Complaint alleges that the practice violates the anti-tying provision of the Bank Holding Company Act, 12 U.S.C. 1972. Bank One's practice constitutes a tying arrangement, according to Batten, because the bank conditions cashing checks drawn on Bank One upon the requirement that the presenter either pay a fee or become a Bank One customer. Count II claims that the practice contravenes the Illinois Consumer Fraud Act, 815 ILCS 505/2, and the Texas Deceptive Trade & Practices Act, Tex. Bus. Com. Code § 17.41. Count III seeks restitution.

Bank One asks this Court to dismiss Batten's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, we grant Bank One's motion.

LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether the plaintiff has properly stated a claim for which relief may

be granted. Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir. 1995). The court must accept as true all of the plaintiff's well-pleaded factual allegations, as well as all reasonable inferences. See Coates v. Illinois State Bd. of Ed., 559 F.2d 445, 447 (7th Cir.1977). However, the court need "not strain to find inferences favorable to the plaintiffs" which are not apparent on the face of the complaint. Id. The court will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Ledford v. Sullivan, 105 F.3d 354, 357 (7th Cir.1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

A properly filed amended pleading supersedes the prior pleading. See Duda v. Board of Ed. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1057 (7th Cir. 1998). Accordingly, this Court will look solely to Batten's Amended Complaint in evaluating Bank One's motion to dismiss.

DISCUSSION

I. Batten's Section 1972 Claim

Batten alleges that Bank One's practice constitutes a tying arrangement in contravention of federal law. A tying arrangement occurs where one party agrees to sell one (tying) product only on the condition that the other party also purchase a different (tied) product. See Stefiuk v. First Union Nat'l Bank of Fla., 61 F. Supp. 2d

1294, 1297 (S.D. Fla. 1999). Federal law prohibits banks from engaging in tying arrangements that condition any service on the requirement that "the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service." 12 U.S.C. § 1972(1)(A). Successful claimants can recover treble damages under this provision. 12 U.S.C. § 1975.

Section 1972 seeks to eliminate anti-competitive bank practices. As the Seventh Circuit explains, section 1972 "prohibit[s] exclusive dealing practices -- those that attempt to prevent customers from dealing with other banks." Exchange Nat'l Bank of Chicago v. Daniels, 768 F.2d 140, 143 (7th Cir. 1985) (citing McCoy v. Franklin Savings Ass'n, 636 F.2d 172, 175 (7th Cir. 1980). The Seventh Circuit treats section 1972 as the banking equivalent of the Clayton Act. See id. Thus, plaintiffs in the Seventh Circuit must show that the anti-tying practice was anti-competitive and designed to lessen competition. See Johnstone v. First Bank Nat'l Ass'n, No. 95 C 2008 1998 WL 565193, at *7 (N.D. Ill. Aug. 31, 1998); FDIC v. Linn, 671 F. Supp. 547, 561 (N.D. Ill. 1987).

Congress did not, however, intend to disturb traditional banking practices when it enacted section 1972. Accordingly, the provision's plain language excludes loan, discount, deposit or trust services from section 1972's ambit. 12 U.S.C. § 1972(1)(A). The Senate Report confirms that "[t]he Committee does not intend . . . that this

- 4 -

provision interfere with the conduct of appropriate traditional banking practices." S. Rep. No. 1084, 91st Cong., 2d Sess. 1, reprinted in 1970 U.S.C.C.A.N. 5519, 5535.

In light of the foregoing principles, we find that Batten has failed to state a claim upon which relief can be granted under the anti-tying provision. Even taking the facts alleged in the light most favorable to Batten, which we are required to do for purposes of a motion to dismiss, we conclude that Bank One's practice is not a tying arrangement; that the practice is not anti-competitive; and that Bank One is engaged in a traditional banking practice outside of the scope of the anti-tying provision. All of these determinations are fatal to Batten's claim.

a. Bank One's Practice Is Not A Tying Arrangement

Batten alleges that Bank One "furnishes the service of honoring checks drawn on it on the condition or requirement that the holder pay money to it or become a customer of the Bank One organization." (Am. Cplt. at 6.) This allegation fails to meet the definition of a tying agreement. Taking the facts alleged by Batten as true, the "tied" product is the check-cashing service. Batten presents two possible "tying" products: the imposition of the three dollar fee and the option to open an account with bank one. Neither, however, constitutes a "tying" product for purposes of section 1972.

The three-dollar fee cannot be a "tying" product under section 1972 because it is a fee, not a service. Section 1972 prohibits banks from conditioning one service upon another. It does not, however, forbid banks to charge minimal fees for performing services for non-customers.

Nor can the requirement of opening an account with Bank One be a "tying" product for purposes of section 1972, because the statute expressly exempts "deposit services" from the statute's purview. See 12 U.S.C. § 1972(1)(A) (excluding "loan, discount, deposit or trust services]" from the purview of the statute). A bank account is the quintessence of a deposit service. At least one court has already held as a matter of law that a bank requiring a customer to open an account falls within the deposit service exception to section 1972. See Stefiuk v. First Union Nat'l Bank of Fla., 61 F. Supp. 2d 1294, 1298 (S.D. Fla. 1999) (holding that the "plain language [of section 1972] exempts from the anti-tying provision the condition that a customer obtain a deposit service[,] i.e., open an account"). This court agrees that the opening of a bank account constitutes a deposit service for purposes of the anti-tying statute. Accordingly, Batten has failed to allege the existence of a tying arrangement under section 1972.

### b. Bank One Is Engaged In A Traditional Banking Practice

Even if Bank One's practice does not fall into the express "deposit services" exemption to section 1972, it still constitutes a traditional banking practice that falls outside of the scope of the provision. See 12 U.S.C. § 1972(1)(A); 1970 U.S.C.C.A.N. at 5535 (stating that section 1972 is not intended to interfere with traditional banking practices). Courts have held as a matter of law that bank policies adopted to protect the bank's investment are traditional bank practices outside the scope of section 1972. See Sanders v. First Nat'l Bank & Trust Co., 936 F.2d 273, 278 (6th Cir. 1991) (holding that "[a] condition that a heavily indebted van customer provide additional collateral in exchange for forbearance on collection of a defaulted note" does not violate the Act); FDIC v. Linn, 671 F. Supp. 547, 562 (N.D. Ill. 1987) (holding that conventional efforts by banks to protect their investments constitute traditional banking practices); Nordic Bank PLC v. The Trend Group, 619 F. Supp. 542, 557 (S.D.N.Y. 1985) (holding that a bank's requirement that debtor substitute new collateral for uncreditworthy leases and provide additional collateral for outstanding loans amounted to traditional banking practice to protect bank's investment). Bank One's practice derives from this same motive: to protect the bank's investment.

When a non-customer presents a check to be cashed by the drawee bank, the non-customer expects immediate payment in cash. Cash payments are final in the

strictest sense. See Uniform Commercial Code §§ 4-215(a)(1) (stating that "[a]n item is finally paid by a payor bank when the bank has . . . paid the item in cash"); 4-303(a)(2) (stating that "[a]ny knowledge, notice, or stop-payment order received by, legal process served upon, or setoff exercised by a payor bank comes too late to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item if the knowledge, notice, stop-payment order, or legal process is received or served and a reasonable time for the bank to act thereon expires or the setoff is exercised after . . . the bank pays the item in cash"). These final transactions pose substantial risk to banks, such as the possibility of overdraft, forgery or fraud. Should one of these occur, the bank is left with no recourse after a final cash transaction. See id.

Bank One's practice offsets these risks. The first option -- requiring non-customers to pay a check-cashing fee -- generates funds to cover any losses due to forgery or fraud. The second option -- requiring non-customers to establish Bank One accounts and become customers -- permits Bank One to defer the decision whether to pay or return checks unpaid until the banking day following the banking day of presentment. See Uniform Commercial Code § 4-215(e). These risk-aversive tactics are traditional banking practices outside the scope of section 1972. They are analogous to other practices designed to protect bank investments which courts have held to be

traditional bank practices not subject to section 1972 as a matter of law. See Sanders v. First Nat'l Bank & Trust Co., 936 F.2d at 278; FDIC v. Linn, 671 F. Supp. at 562; Nordic Bank PLC v. The Trend Group, 619 F. Supp. at 557.

Thus, based on the statute's plain language and the case law, we find that Bank One's practice is a traditional banking practice. As such, no reasonable jury could find that the practice violates section 1972.

c. Bank One's Practice Is Not Anti-Competitive

Even if Batten sufficiently alleged a tying arrangement not involving a traditional banking practice, his claim would still fail because it does not allege that Bank One's practice was designed to lessen competition. Bank One's practice does not compel Batten to use Bank One's services to the exclusion of others. See Graue Mill Dev. Corp. v. Colonial Bank & Trust, 927 F.2d 988, 991 (7th Cir. 1991) (affirming dismissal of a section 1972 claim that failed to allege compulsion as a result of the tying arrangement). To the contrary, Batten remains able to fulfill his banking needs at any bank of his choice. Different banks may impose different requirements for cashing Batten's check, but Bank One's practice in itself does not prevent Batten from taking his banking business elsewhere. Bank One's practice may strike Batten as unfair, but to transform that unfairness into an anti-tying claim contorts the spirit of that provision. The anti-tying provision seeks to prevent "anticompetitive disruption"

in the marketplace, Doe v. Norwest Bank Minn., N.A., 107 F.3d 1297, 1305 (8th Cir. 1997), not serve as a vehicle for consumers to air their unfair business practice complaints in federal court. Nor can it be used to defeat the imposition of a modest fee for services rendered.

Doe v. Norwest Bank Minnesota supports our conclusion. See id. In that case, plaintiff Roe alleged that in order to purchase property damage insurance from defendant Norwest Bank, he also had to purchase other unauthorized and undisclosed coverage. See id. at 1304. The Eighth Circuit concluded, however, that Roe failed to allege an anti-competitive tie. See id. at 1305. Roe conceded that he could have obtained the tying product (the property damage insurance) from any institution. See id. As for the tied product (the additional undisclosed coverage), Roe professed no interest in acquiring it in the first place. See id. Because Roe did not want the tying product, the Eighth Circuit was unable to find any anticompetitive disruption in the tying market. See id. It concluded that since "Roe can buy basic property damage insurance anywhere and does not want to buy other coverage at all[,] it is clear that Norwest's practice cannot possibly lessen competition." Id.

Applying that reasoning to the case at bar yields similar results. Plaintiff Batten wants his check cashed (the tying product) but presumably desires neither to open an account at Bank One nor pay the three dollar fee. Like the Doe plaintiff, Batten does

not allege that he cannot cash his check anywhere else; his challenge is limited to Bank One's practice. Because Batten does not want a bank account in the first place, the effects of Bank One's practice will not be felt in the tying market (banks seeking to increase their account-holder base).

Thus, Batten has failed to allege an anti-competitive tying arrangement actionable under federal law.

II. Batten's State Law Claims

Having dismissed Batten's lone federal claim, we decline to exercise supplemental jurisdiction over his state law claims. See 28 U.S.C. § 1367(c)(3); Stefiuk, 61 F. Supp. 2d at 1299 (declining to exercise supplemental jurisdiction over plaintiff's state law claims after dismissing plaintiff's section 1972 claim). Therefore this Court dismisses the remaining state law claims without prejudice.

CONCLUSION

For the foregoing reasons, this Court grants in its entirety Bank One's motion to dismiss Batten's Complaint.

Charles P. Kocoras
United States District Judge

Dated: September 14, 2000